W. W. W. vs. Dorminey May it please the court, I'm Jim Pike and it's my pleasure to represent Officer Dorminey in this appeal. Officer Dorminey brings this appeal to enforce his right to qualified immunity for his use of reasonable, proportional, and incremental force to detain a combative student, to stop crimes that were in progress, and to protect other students, school officials, and Officer Dorminey himself. A robust body of case law supports exactly what Officer Dorminey did. I'd like to start by addressing the opinion in Richmond vs. Badia that the court asked us to prepare for, and then I'd like to identify three cases that I believe compel the court to enforce qualified immunity for Officer Dorminey. I want to give you my best case on the qualified immunity standard that applies to a takedown and handcuffing, then I'd like to give you my best case on a takedown and my best case on a handcuffing. First, Badia. Badia is the polar opposite of this case. In Badia, the student, and I want to quote, remained passive throughout the entire encounter, never attempted to flee, never refused any lawful commands, and did not pose a threat. So let's break that down. In Badia, the student was compliant. In our case, J.I.W. disobeyed the classroom teacher, disobeyed the guidance counselor, disobeyed the special education teacher, disobeyed the assistant principal, disobeyed the principal, disobeyed Officer Dorminey, and disregarded Officer Dorminey's verbal warnings, including, I'm going to put you in handcuffs and I don't One of my questions about this case, and I'll ask to the other side primarily, is about the sort of unusual procedural posture we're in, given that this is a motion to dismiss, but yet there's a lot of evidence in the record. Where does that evidence that you just told us, where does that come from? That comes from the statements that the plaintiffs refer to in the complaint and that we attach to the motion to dismiss under the incorporation by reference doctrine, and that they're central to the allegations, they're referred to in the complaint, and they're undisputed. Where specifically does the information about Officer Dorminey giving a warning to the plaintiff, where does that come from? Specifically, I'm quoting Officer Dorminey's statements, but that's all of the... So it's not Officer Dorminey's statements that are in the record? Officer Dorminey's statements and others, I can break it all down for you. Okay, that's great. I was curious, like I said, it's very unusual to have, at this posture of the case, have, for example, the defendant's statement of what happened even discussed. So one of the things I'm trying to figure out here is how do we address those statements? The district court considered them, there was no objection filed, we have this doctrine of incorporation by reference, the complaint embraces those statements, so you see the complaint refers to those statements as its recitation of the version of events. Does the plaintiff contest that in his brief on appeal? In other words, is that an argument that the district court heard by considering the video and at least the bulk of the statements in its motion to dismiss order? Yeah, but you're saying two things. Yes, the plaintiff does refer to statements by the officer, but the question, as I understand it, that the statement you just made doesn't come from the complaint, it comes from his declaration, is that correct? Okay, so that's not in the complaint. So it's definitely a lot of what you're relying on is outside the four corners of the complaint. Whether we can do it is another issue, but what you're relying on is largely outside the four corners of the complaint, correct? You're right. And you're saying, and did you file an affidavit, did you attach it to the motion to dismiss? Yes, Your Honor. Okay, and you're saying nobody objected to it being considered. That's right, and I cited case law. Can I give you a Supreme Court example of that? No, I think we know what the law is. Go ahead. Well, if I could just follow up on Judge Holden's question. I mean, I think what we identified is certainly we can consider these, I think, under the Supreme Court's case law, under our case law, because they were referenced in the complaint, but do we have to take them as true, right, just because they were referenced in the complaint? Do we have to, for example, credit Officer Dorminey's testimony at this stage of the case, given that it was, given that it's not in any sort of, I mean, you heard the first argument, right? These don't, these aren't under penalty of crime. I mean, the way I look at it is I don't think these statements would even be, that would even satisfy the summary judgment standard, right? Well, I mean, neither would the allegations of the complaint themselves. I mean, this is just the rule. It's Crenshaw v. Lister, the police reports, you know, the plaintiff actually attached those, but they were credited in the officer's accounts in the police reports. Is the case law you're referring to, and correct me if I'm wrong, but the case law, there's sort of a line of cases which suggest that where there's an attachment to a complaint, we credit the attachment over inconsistent allegations in the complaint? That's true. Crenshaw, Simmons v. Peavey, Welsh, Lumber, FTC v. Abbott. And so what you're really doing is sort of combining those two strands of case law. The one is if something is attached, the attachment overcomes the inconsistent allegations in the complaint. And then the second is where something isn't attached, but referred to, incorporated in, and unobjected to, that that gets folded into the motion to dismiss analysis. Is that fair to describe? Yes. And I think you find in Ashcroft v. Iqbal, there was a, I believe it was that one or Twombly, it may have been Twombly, there was an article quoted. And the Supreme Court said basically they referred to this article. We can refer to the rest of it because they mentioned it in their complaint. And it may have been Twombly. If you look at it, there's an example where the Supreme Court did it. I think it's an antitrust case and they're referring to news coverage. If it's the antitrust case, it's Twombly. So I'm sorry, I interrupted you. So you were going to talk about Baddia. And so to me, the question, the issue that distinguishes this case from Baddia or doesn't is whether the student was resisting, actively resisting not complying with commands and things of that nature. So what do you have that shows that the student was doing that? So I've given you the six different public officials whose commands he disobeyed. I've given you Officer Wilmer's verbal warning. Now let's talk about the student of Baddia was non-threatening, whereas here, J.I.W. slung his book bag in the classroom, threatened the students in the classroom. He was originally kicked out because the original teacher was worried about his safety and the safety of the other students, correct? Yes, Your Honor. Got out in the hallway, disregarded the teacher's command to report to the office and all the other commands of the other people that arrived and punched a locker in the hallway, lunged toward the principal with a clenched fist, kept pulling where Officer Dorminey had to intercept him to stop him from punching the principal. One of the things he decided was a striking assault. Then he kept pulling away from Officer Dorminey. If you watch the video closely, you're going to see J.I.W. enter the frame first and Officer Dorminey's kind of trailing behind just trying to hold on to that arm. And J.I.W. gets to where he's facing the wall and you'll see, watch this part of the shoulder in the upper arm, you'll see a couple of tugs as Officer Dorminey's still trying to hold him. And then J.I.W. pivots with his back to the wall and there's still a little more tugging. And Officer Dorminey tells him at that point, I'm going to put you in handcuffs and I don't want you to get hurt. And Officer Dorminey starts to bring the hand back and that's when the fight breaks out. He's clenched his fist two seconds before the struggle goes dynamic. J.I.W. clenches his fist and then when Officer Dorminey starts to bring that hand back, the fight breaks out and he drops Officer Dorminey on the ground with a hip check. I want to forward things a little bit. So as I understand both the district court's order and your opposing counsel's brief, the focus really isn't on anything that you're describing from their perspective, it seems to me. In other words, they sort of concede pretty much everything that you're talking about mostly until the third, what I'll call the third takedown or the third attempt to put handcuffs on. And at that point, after two failed attempts, Officer Dorminey brings him to the ground and a pop is heard. What happens after the pop? After the pop, as the video captures the whole event, Officer Dorminey relaxes pressure on the left arm and it moves to a… He's on top of him at that point, right? He is somewhat on top of him. It looks like he may be bearing some of his weight on his head. And he still has the left arm, right? He relaxes pressure on the left arm. The allegations are, and correct me if I'm wrong, the allegations are that he is writhing in pain and screaming at that point, correct? That is an allegation in the complaint. Is that contradicted by anything in the video? No, sir. I agree with you. I think that's a fair assessment. Can I ask something? The video doesn't have any audio. It doesn't. The video doesn't have any audio, so we don't know whether he's screaming. Who's saying what from the video? Right, it's not contradicted by it, right? No, sir. Okay. And then is it contradicted by any of the statements that you have argued to us are incorporated into the motion to dismiss? No, sir. Okay. So let's assume then the facts are these. He's resisting up until the point he's brought down. At that point, a pop is heard. And at that point, he continues to put at least some pressure on the body, some pressure on the left arm, puts him in handcuffs, and keeps him in handcuffs for close to five minutes until the nurse comes and he's released from handcuffs. Are those – you agree with me that those are the facts that we would take at this point on a motion to dismiss? So I say he relaxes pressure on the arm. But he has the arm. He's holding the arm. Right. The only arm he moved forcefully is the uninjured arm. Right. And then applies the cuff to it. And can I give you the cases? Yes, but let me – give me a minute. Is there any evidence – the allegations certainly are he's not resisting at the point of the pop. Is there any evidence in the video or anything in the record from the video or the statements that he continues to resist after the pop is heard? That he's not compliant, that he's kicking his feet, that he has his right arm under his body, disobeys numerous verbal commands to bring it back. And he also had to reach and force it behind his back and required assistance from the principal to complete the handcuffing. Can I remind you, I've got 10 cases in this room where officers – Wait, wait, wait. Can I ask you, what is the cause of the takedown, to start the takedown? Now, what did he do that caused – why they wanted to go arrest this kid? He resists the handcuffing when the officer don't need to. No, no, no. You've got to have a reason why you go into the handcuffing. Okay. Before you go into the handcuffing, what is the reason for the handcuffing, the need to use the force of handcuffing here? He just tried to punch the principal and won't calm down and keeps pulling away from the officer. Okay. 33 seconds earlier. So the reason is he had tried to punch the principal. I'm just looking at the allegations. I'm going to start reading those statements. Those statements are pretty graphic about – they're specific about he punched the locker, bowed up, fist clenched, lunged toward the principal. There's reference to a striking assault. He never actually touched the principal. We know that. Yes. Stevens v. DiGiovanni had a severe arm injury. Handcuffs were applied, and this court found it. Okay. I guess I missed that he did anything. This is Mr. Henson's statement. Is he the principal? Yes, Your Honor. After punching the locker, he started walking toward me aggressively. Officer Domeney stopped him and walked him to the opposite wall as I stepped aside. Okay. So it was over as to the principal, right? Well, it was not over. He didn't have him under control because he kept pulling away from the officer. He took him off of the principal or intercepted the assault on the principal, but he was not secured. Okay. But after – I'm just trying to follow the timeline. I don't know what the answer is. I'm just trying to make sure I understand it in my mind. He stopped him and walked him to the opposite wall, and Henson says he stepped aside. And then three minutes, 13 seconds expire. No, ma'am. The events that occurred in the next three minutes, 13, were in the cameras. He places his left hand and begins to walk him down the hallway and back into the cameras. They stop, and JRW's back is against the wall in the hallway. Is that correct? Well, not at first. At first, he's facing the hallway. You see the upper arm. He pulls, he pulls, and he pivots around. Officer Dorminey's following him, trying to maintain a hold on the arm. They're in a fight 33 seconds after JRW appears on that camera. It's not three minutes and 13 seconds. Okay. Can I back up a little bit? So Judge Hall read you the principal's statement. There are some other statements, not Officer Dorminey's, that talk about that confrontation. As I understand it, the statements collectively state that JRW was, quote, bowed up, that he, quote, came at the principal, that he, quote, lunged at him, and that he did so aggressively and, quote, with his fist clenched, and that, quote, that he was going to hit the principal. Are those all correct? Yes, sir. Yes, sir. So that's before the decision was made to even handcuff him. And even at that point, he didn't handcuff him. He just tried to bring him down the hallway, right? He tried to de-escalate verbally. When is the only point at which, according, again, to the record, did the officer decide to put on handcuffs? When he keeps pulling away and won't calm down, he's trying to talk him down. And the officer says, I'm trying to de-escalate. Do you have anything else? Can I ask a question? Could you just go back to the question that Judge Luck asked you, you know, to address the sort of moment with the pop and the placing the handcuffs after the pop? Sure. Legally or factually? However you want to address it. We don't need 10 cases. Give us your best one. That's the one I want to give you, Stevens v. DiGiovanni. Published opinion one year before this incident, 2017, where the suspect had a severe hand injury, part of the arm. Isn't the difference there, though, that the officer didn't hear a pop? In other words, as I understand it, the main factual difference there is the officer, it turned out that he got seriously injured from the handcuffing procedure because he had a pre-existing condition that the officer didn't know about. Here, though, the testimony in the light most favorable to your opposing counsel or the other side is that the officer did hear the pop. In fact, I think that's from his statement itself. Well, so I didn't read Stevens that way. I understood Stevens to understand that even though the officer handcuffed knowing he had a severe, because the officer caused the injury, lifted him up. Right. And the ruling was not that the officer did not know and therefore could not be liable, because we've had cases like that where there are pre-existing injuries, but that wasn't the basis for this one. Rodriguez was one. Okay, this one was, it's still de minimis in the grand scheme of things and would not have violated the Constitution. Is that true, and I know we've gotten you over, so I don't want to go too much over, but is that principle that you've just articulated, and I agree with you, our cases, a lot of them say that handcuffing is de minimis force. Does that survive what seems to be our string of cases in the school context where we seem to treat handcuffing of children differently than we would in the criminal context? So add Gray plus Badia to that line. Have we established at least a line of cases that it's just a little different about handcuffing in school? I don't think so. Nobody was handcuffed in Badia anyway. The student was not handcuffed. He was just held on the ground for three minutes. In Gray, the court made the distinction that said the problem for Deputy Bostic is that Gray didn't pose a threat, and that's clearly distinguishable in this case. And things pop. Just because something pops, people's knees pop, joints pop, it doesn't necessarily mean the person is disabled. Okay, and like I said, ten cases. Houston v. Callahan says officers are entitled to rely on existing precedent. Judge Hall has a question, then we're going to wrap up. I just want you to help me with this because I'm stuck back at before the takedown and whether we have a factual issue as to whether the conduct of J.W. was enough to justify what then happened. And I'm reading the allegations of the complaint, which you can refute them, but they still at this stage were not summary judgment, right? We're 12B6, right? So we should, so you agree we should take the allegations of the complaint as true. Is that correct? I do not. To the extent Crenshaw, Simmons, Abbey v. say to the extent that the exhibits are specific, they override conclusory allegations in the complaint. Okay, well, then that goes, suppose the allegations in the complaint aren't conclusory. Do we still take the allegations in the complaint factual? Well, let's assume for the sake of my question that they're factual allegations and they're not conclusory. Even if you've got your affidavits or whatever you put in attached to your 12B6, there would be an issue of fact, right? There could be. It would depend on what it says. Okay, well, so let's go to what it says, okay, and whether it's conclusory or whether it's factual. This part of the video corroborates, he never attempts to hit, strike, or fight Dominey. Okay, we don't have him, I understand he's pulling away. Okay, I got that part. And I understand what he's done all before as to the principal. Okay, I'm talking about once the officer has him by the arm and he's going down the hall. So just stay with me there. The complaint says, at that point, he never attempts to hit, strike, assault, or fight anyone. Now, I know he's, we could call him, he's resisting. He's not walking down the hall. He's pulling away. There's no doubt about that when you look at the video. He's going back. Okay, that's a factual allegation. He doesn't hit anybody. Do you agree with that? He doesn't strike anybody and he doesn't assault the officer. I don't agree with that. Okay, what? He attacks the officer by all accounts. He does what? He attacks the officer, tries to swing the officer into his hip and throw the officer to the ground. The video shows that and the witnesses describe that in their statements. So you're saying that's contradicted, the allegation that he never attempted to hit, strike. That's a factual allegation. And you're saying it's contradicted by the statements. I say the video itself. You're saying the video is so clear that we'd have to say it's so obviously patent. Because when you read the video, there's a lot of ways I think you can interpret the video. I don't think that's just me personally as to what's really going on here because you don't have audio to know what's going on. But anyway, you've answered my question. You say that is contradicted by the video and that's not true. Okay, and it says, it says, 20 seconds later without any visible provocation, Dominique harshly twists J.I.W.'s wrist and wrenches the left arm behind his back. And you're saying you don't dispute that happened, that he harshly twists the wrist and wrenches his arm behind his back. You're just saying he had cause to do so. That's true. The video shows it occurs about two seconds after the hip check. As soon as Officer Dormey regained consciousness. Okay, he says 20 seconds. I don't know, but you don't dispute that he harshly twists the wrist and wrenches the left arm behind his back. Okay, and a few last seconds later, he again harshly twists the wrist and wrenches the left arm. So you don't dispute that happens twice. But we can get to whether he had cause, whether he was resisting enough. You're saying he was resisting enough. They claim he wasn't resisting enough. I'm just trying to understand what we're talking about. Okay, so he harshly, I'm going to go into the allegation, he slams him to the floor. Is that correct? He took him to the ground. Did he slam him to the floor? I mean, just take him to the ground. Like an unnecessary roughness penalty where they pick the quarterback up. Uh-huh. They bring his weight down on JW? He just followed him to the ground and part of his body is on him. I'm going to the allegation. I mean, is this refuted or proven absolutely untrue by anything in the record? This is a factual allegation, right? The video does not show any kind of menacing conduct as Officer Dormier does. But the video doesn't contradict his allegation that he slammed him to the ground. That's one way to interpret it, bringing his only body weight down on JW and driving the elbow into the back. That's not contradicted by the video. His elbow is not driven into the back. His forearm lies parallel with his body on the video. Okay. That's all. Okay. Sure. Thank you, Counsel. Good morning, Your Honors. My name is William Johnson. I represent JIW. Counsel, if you could start off for me because I'm sure there's a lot of questions, as you saw from the last hearing opposing counsel. If you could start off for me, it seems to me that your focus, at least here on appeal, is what happens after the third takedown. Am I wrong or right about that? That is one focus. Well, I need you to tell me at the point that this becomes excessive. And it seems to me I can read parts of your brief for you. In fact, let us do that together. So on page 13 of your brief, Counsel, on page 13 of your brief, it states, quote, Quite obviously, it is JIW's position that once he was on the ground, he was not resisting arrest but rather experiencing severe pain. On page 2526 of your brief, quote, At the time, the officer, I'm using officer instead of Mr. Dorminey, wrenched JIW's arm behind his back for the third time. It is obvious that JIW was neither committing nor attempting to commit any crimes. Isn't that the point at which you were saying that the force became excessive? Yes, sir. Okay. But I want to go back to one thing Judge Hull said, which is when Officer Dorminey and JIW are walking down the hallway, when they come back into the frame of the video, JIW, the student is not trying to flee Officer Dorminey. Counsel, I need you to answer my question as specifically as possible. And I don't want to hear an explanation. I just want you to answer it as specifically as possible, Counsel. What is the point at which excessive force happens here? The excessive force happens when Mr. Dorminey wrenches his hand behind his back and begins the process of taking him to the ground, at some point, burning his arm. Okay. And I think I understand that. So I want to get a really fine point on it. So after the second, we all agree there were three attempts at handcuffing. There's attempt one, where he balls his fist and sort of stiffens up. Two, where your opposing counsel says he tries to sort of hip check him over. And then the third time is when he did the maneuver to put him to the ground. When he started after the second maneuver but before the third maneuver is when excessive force happens? No, sir, I don't agree with that. Tell me when excessive force happens. Excessive force begins when he wrenches his left arm behind his back and begins that process of arresting him. When is that? You're saying at the point of the first arrest attempt? Yes, sir. The point that excessive force begins is when Officer Dormany suddenly and without provocation wrenches his left arm behind his back. Counsel, there are three attempts to put handcuffs on your client. Yes, sir. Okay. At what point before attempt number one, before attempt number two, or before attempt number three did excessive force begin to happen? Before attempt number one. Okay. So let's focus on that. Do you agree with me that if somebody commits a felony, I'm not saying your client did, if somebody commits a felony, it is not excessive force for police officers to put handcuffs on that person? Agreed. Okay. Do you agree that based on the record that we have, which includes an incorporated and, as I read your brief, not disputed, the statements, the video, and the allegations and the complaint all read together, do you agree with me that your client committed the felony of assault on a school official? Absolutely not. Okay. So you disagree that the statements say that he bawled himself, I'm sorry, let me go back to it because I want to make sure that I have everything correct, that he bowed up, quote, unquote, bowed up, that he, quote, unquote, came at the principal, that he, quote, unquote, lunged at him, quote, unquote, aggressively, that he, quote, unquote, had fists clenched, quote, unquote, like, quote, unquote, he was going to hit the principal, that none of that, that's not in the record? Those allegations are in the record. Okay. So this goes back to the questions that Judge Brasher started with. So as I understand the procedural posture we're in, and I agree with him, my first thought when I read this is this is odd, and I think this is causing some of the confusion that you're hearing here. As I understand the procedural posture, you and your complaint discussed the video and discussed the statements. They then moved to dismiss. In the moving to dismiss, they said here's the video, here are the statements, and the district court in ruling said and relied on case law which said where someone refers to documents, where they're attached and where they're integral and material and the validity of them are undisputed, their authenticity is undisputed, we can consider them together to the extent they don't contradict the complaint, and where they contradict the complaint, we rely on the documents. Is anything I say incorrect? No, sir. Okay. No, I incorporated the video footage and the statements deliberately so that there would be an adequate record of the conflicting accounts of what the student alleges occurred, how to interpret the video, and then what the staff at the school did. And that's a good point, I guess, that goes to this issue about how we interpret these. I mean, the student has one account, right? It's paragraphs 68 and 69 of your complaint, which is that JIW never destroyed, damaged any property, never threatened to do so. JIW never actually touched or threatened to touch any student, teacher, administrator, or defendant in any offensive manner. But you say that is your account, and you say these statements are just another account. That's right. And so at this point in the case, we have to credit your account, not the defendant's account. Yes, sir. Does the law change just because you happen to mention the defendant's account in your complaint? I don't believe it does. I don't think the 12B6 standard changes, which is that you have to accept what the plaintiff's allegations are at this point. I don't think it's enough for a person to come in and allege a 1980—allege a Fourth Amendment violation by just saying, well, a police officer did this, this, and this to me, and I allege that that meets the pleading standard for one of these violations. I believe there have to be additional facts. Don't we have a ton of cases which seem to suggest that where you attach—assume it was attached to the complaint. You just stapled the statements on. Where those statements or attachments contradict the allegations in the complaint, the attachments prevail. Don't we have cases that say that? Yeah, I think we do. I think we do. Including arrest reports, right? Yes. But if the court considers the totality of the video and Officer Dormany's statements, along with the statements of everyone else, there are clear discrepancies between what they say. And there is no point— I don't disagree with that. But not really with regard to the threatening conduct in some manner. And I gave you—the quotes I gave you were all peppered from those different statements. But those are all sort of statements about what happened with regard to the principal, right? Right. But at the point at which Officer Dormany wrenches J.I.W.'s hand behind his back, no one's at threat of harm anymore. I don't disagree. Okay. Let's assume that you are 100 percent right on that. This goes back to my question I asked you a little earlier, which is, let's say that I have felony information that someone assaulted a police officer. And five hours later, I see the assaulter on the street. I, a police officer, see the assaulter on the street. What am I allowed to do? He's not threatening anybody at that moment. Well, I don't know the answer to that. You do know the answer. I'm allowed to put him under arrest, and I'm allowed to put him in handcuffs, right? If he, if the officer sees him five hours later. No, I have, yeah, sees him five hours later, and I have sworn statements laying out that he assaulted, every indication of the elements of assault on a school official or mat. Okay. Then he can arrest him. If we have that here, based on these statements, then how can he not, even though the principal is not under threat at that moment, not put him under arrest for committing that felony? Because he doesn't commit assault. Assault under Alabama law means that with intent to cause physical injury to a teacher or to an employee of a public education institution during or as a result of the performance of his or her duty, he or she causes physical injury to any person. J.I.W. didn't cause any physical injury. He didn't commit assault. In fact, Officer Dorminey, in his statement, says, I'm watching what's happening. He attempted to, he attempted to commit assault. He did not attempt to commit assault. He absolutely did not. He didn't, he did not throw a punch. I agree. Lunging at someone with a closed fist aggressively as if you were going to hit that person is not, is not, that's not a crime in Alabama. Well, Judge Bass disputed. There are two statements. There's at least one other statement that where there is a complete omission that J.I.W. did anything to threaten Mr. Henson. And if Mr. Henson was under any serious threat at some point, that all dissipated and was a non-issue. But that goes to my point is the point at which if he committed a felony, it doesn't really matter if he's arrested five seconds later, five minutes later, or five hours later because he committed a felony and he's allowed to be put under arrest. The question is, is there any contradicting evidence that he committed a felony or a misdemeanor or something that would allow him to be arrested? Well, I. Well, you got paragraph 69. He never actually touched or threatened any teacher, student, administrator. I don't know if Mr. Henson omits any report of any physical aggression against him. I don't know that omission matters. He omits any report of threat by J.I.W. to anybody, any earlier teacher or anybody. And this 69 says he never actually touched or threatened to touch anybody. Judge Hull, Mr. Henson says after punching the locker, he started walking toward me aggressively. That's not assault. Then he says Officer Dormaney stopped him and walked him to the opposite wall as I sat aside. There is no assault that occurred. There is no attempted assault that occurred because the person who is the supposed victim here, Mr. Henson says, doesn't say anything about him throwing a punch or bowing up or clenching his fist. He says he walks toward me aggressively. Is that. Is that. I agree with you. Is that inconsistent with the statements that do show that there was an assault? I think the three or four or five statements that say that it is. Well, I don't agree that they say there's an assault. Well, that that that he lunged at in with a fist in a way that looked like he was going to hit him. No, sir. I do not believe there are any statements that say that that J.I.W. looked like he was prepared to strike anyone. There are statements that he says that there are statements that describe the student's posture as his chest is sticking out. His fists are clenched. But there is no video that shows what that exactly means. No statement. None of the statements said he lunged, that J.I.W. lunged at the principal and, quote, he was going to hit, end quote. None of them. There is a statement that says he lunged at him. And what about, quote, he was going to hit, end quote. I don't remember seeing anyone say that he was going to hit him. All right. And I agree that someone may have perceived that J.I.W. was going to do that, but there is nothing that says that he threw a punch, that he took a swing, or that he got so close to Mr. Henson that Mr. Henson was in some way afraid for his safety. What is the video? Maybe it doesn't show us the time when he punched the locker, Henson says, and started walking toward me aggressively. Because even Henson doesn't talk about the fist or any of that. And your question, Judge Hall, is does the video show anything before? After punching the locker, Henson says he started walking toward me aggressively, but Domini stopped him and walked him over to the other side of the wall. Is that on the video? I mean, do you see Henson on the video? You can see Henson on the video. You do not see the part that you're talking about. Okay. You just see him going back over toward the locker. Yes. Or you just see the officer and, yeah, I thought all I saw was him at the locker. The two other women in the video who are looking at their phones, they don't seem concerned about anything. They just kind of look at their phones and just in the hallway. I don't think Mr. Henson is concerned about anything either. He remains there in close proximity to the student and to Officer Dorminey. And I want to correct one thing that Mr. Pike says. The student does not hip check Mr. Dorminey at any point before Officer Dorminey begins the arrest. There is no physical aggression by JIW before the arrest begins. I didn't hear your opposing counsel say that. I think what your opposing counsel is suggesting is between the first attempt at handcuffing and the second attempt at handcuffing, so to your point, before the arrest started to happen, that's the point at which he tried to hip check him. Can I get you to address where you sort of started, which is what the district court said, go back to the pop, right? So there's a pop that the officer says he heard and that after hearing that pop, which we now know was a bone breaking, the officer continued to handcuff. What do you say about that? Well, I say that at that point there is also excessive force going on and I do not agree with Officer Dorminey's position that the JIW is attempting or somehow resisting arrest. What I think happened is Officer Dorminey doesn't know how to apply the maneuver or the wrist lock it is, and at the point at which he starts the arrest, the student is like, what are you doing? We're standing here in the hallway. I've got my back up against the wall. I'm not armed. I haven't committed any crimes. I'm not trying to get away. And there is nothing in Officer Dorminey's statement where he says, I instructed JIW to put his hands behind his back and get up against the wall. I instructed him, put place your hands behind your back. I'm going to handcuff you. He does not give him that instruction. They are standing there and he starts the arrest process, which I say is the beginning of the excessive force. But if the court disagrees, there's no doubt that when he when he tries it on the second or the third time, and here's the pop, he should have stopped because at no point is at no point is J.I.W. in the video try to resist Officer Dorminey or try to fight back to him. He is standing there while this officer is trying to wrench his arm behind his back. And at the point he hears a pop, he could have just stopped. There's no need for him to go for the third time slamming into the ground. Now, once he's on the ground, he still has his left arm, which Officer Dorminey says, I heard something pop. And he says, well, he's resisting. He's resisting my command to give me his right arm. Well, what the video shows is that that J.I.W., his body is on top of his right arm. Officer Dorminey is on top of him. Haven't we said, though, continuously that the act of putting on handcuffs is de minimis and not excessive? You have said that. I agree with you. But if everything up to the point of the pop is justified, I know you say it's not. Assume for the moment it is, then how is the final act of just putting handcuffs on somebody,  Well, when you consider the severity of the crime, the immediate threats to safety of the officer and everyone else, which there wasn't, there's no active effort to resist or evade. And, you know, you've got a 12-year-old student who has a disability because of severe psychiatric diagnoses. You know, when you're in that point and you've got him on the ground, you've already secured the student on the ground. Right? I don't understand at that point why the student needs to be handcuffed. Yeah, let me ask just one more question. This is from the district court's opinion. So the district court says that these are things that were alleged in the complaint. That once J.I.W. was on the floor, Dorminey continued to pull his arm behind his back. That once he was on the floor, he screamed that he was in pain. That after he was screaming that he was in pain, the pop happened before, I guess immediately before. Then Dorminey continued to exert pressure on the arm, pulled the right arm back, which was not, I think, the one that was broken, and then cuffed both of his hands. I guess my question is, so one of the reasons we have qualified immunity is sort of the idea that these things happen really quickly, that, you know, ultimately at the end of the day, the test here is reasonableness, and that's a pretty mushy test, and so that we give the kind of police officers the benefit of the doubt. I'll assume that everything the district court said was true about what happened, but everything that the district court is talking about happened over like three seconds, right? I mean, the pop, the pulling one arm, the moving the other arm. What do we do with the fact that all of this happened? If we're just looking at the pop forward, I guess, what do we do with the fact that all of this happened so quickly when we're talking about qualified immunity? Well, I think that may be where Officer Dorminey's lack of training comes in. I mean, he's the one who's supposed to have a certification that he's been trained on how to interact with students and young people in a school setting. You know, I don't know if some aspect of his training would have given him pause, but he certainly says in his statement, I heard a pop, right? I think that you have to put some responsibility on Officer Dorminey at that point because J.I.W. doesn't have a weapon. He's not in the middle of committing a crime, notwithstanding our disagreement about the assault issue. He's at no point has he verbally threatened anybody else who's in that area. He is not a threat at that point. So why does the officer have to go further? He doesn't have to go further. He can just simply stop right then and there. He's aware enough of the situation to hear a pop. So why can't he just stop it at that point? Anything else to add? Thank you very much, Counsel. And Counsel, you have three minutes left. Thank you, Your Honor. On the video, J.I.W. balls his left fist only two seconds before Officer Dorminey initiates handcuffing. So to say the handcuffing was initiated at a point where he's not a threat, I put the screenshot in our brief. He's sitting there with a ball of fists two seconds while Officer Dorminey is warning him that I don't want to hurt you. I'd like to look at page 69 of their complaint because it's – let's read it completely. You drew a paragraph 69. Paragraph 69. J.I.W. Let me tell you what it does not say. It does not say J.I.W. never touched or threatened to touch any student, teacher, administrator, or defendant, Dorminey. It doesn't say that. It says he didn't do it in an offensive manner. That's a conclusory characterization of how he may or may not have attempted to touch. It doesn't deny he didn't attempt to strike. It just characterizes it as non-offensive. The exhibits override that conclusory allegation. The next quote or the quote – somebody read a quote about Mr. Henson never called it aggressive. Mr. Henson's statement uses the word aggressive. Now, Plaintiff's counsel said he agrees someone may have perceived Is Principal Henson's statement inconsistent with the other statements who observed J.I.W. bowing up, bawling his fist, looking like he was going to hit. It's not the least bit inconsistent. Plaintiff's counsel just told you he agrees someone may have perceived it as a striking assault. Am I right that someone said, quote, that he was going to hit, end quote, the principal? Who said that? I didn't just make that up, in other words, right? No, I'm going to give it to you. Guys, Counselor Kerry Whitaker, document 16-2, J.I.W., punched the locker and bowed up Mr. Henson acting like he was going to hit him. Now, what's important, when he agrees somebody may have perceived that there was a striking assault, what's the qualified immunity standard? No reasonable officer could have believed. Okay, so there's your answer on that, whether Officer Dorminey could have believed there was a striking assault. Felony attempted against the principal, right there. Now, what we also haven't heard is, I've cited case after case that's close to the pocket case. Judge Hull in Vineyard wrote this, when vast specific precedents are said to have established the law, and I've given you Horn, okay, where it said that technically . . . Vineyard's a summary judgment case. Yes, ma'am. There's a lot of evidence. Whatever facts, whatever the source of the facts that we're assuming, and in this case we have sources that we're assuming to be the case facts, when vast specific precedents are said to establish the law, a case that's fairly distinguishable cannot clearly establish the law, okay? And I've given you in Horn, in Horn this court . . . Counsel, you need to wrap up. Judge Bradford has a question. Sir, I just want you to address the same portion of the district court's opinion that I read to your opposing counsel, but sort of in a different light. I mean, so the district court says this. It says that once he was on the floor, Dorminey continued to pull his arm behind his back, place him in handcuffs. After the pop, after he was in pain, he continued to exert pressure on his arm. What about that moment of time being excessive force that would not only be excessive force, but would overcome qualified immunity? One factor that's not true, the video belies it, the arm moved to a natural resting position. He actually relaxed pressure on the left arm. Secondly, even if he had continued to apply pressure for handcuffing, it's not like the deal where the guy's just wrenching the guy's arm. We've got all these handcuffing after arm pop cases, and the Supreme Court tells us officers are allowed to rely on existing lower court precedent if there's not a case on point. And we've got Stevens v. Giovanni that's controlling precedent in this circuit published that files are de minimis to handcuff an injured officer. Yeah, I mean, I think that's the thing. I mean, it can be de minimis, but it's not inherently de minimis to handcuff someone. I mean, you can't handcuff someone who is swimming in a swimming pool, right? You would handcuff them, they would drown, right? So, I mean, just because we've said that handcuffing itself, the activity, is de minimis, I don't think necessarily means that in all circumstances it's de minimis. Yeah, but those are cases, I'll tell you, they're cases where there was no injury like this. This is where people are suing because of the handcuffing and the detention, and that's when we say that. If you go back and read those cases, there's not something where the handcuffing was accompanied by all this force. But let me ask you this. Does your client state anywhere that he told this student that I'm going to put you in handcuffs? Can you put your hands behind your back? Does he ever say that and give a fair warning to the student? I'm not saying it's outcome determinative. I'm just looking at the totality of the facts because it doesn't look like there's any warning. Look, you better come with me or I'm going to put you in handcuffs. May I give you the cites on that? I mean, your client, you don't have to give me the cites. Your client says, your client wrote a declaration and said I told him, come with me or I'm going to have to handcuff you. I've got four spots that he, four times I was verbally speaking to calm him down or I would have to place him in handcuffs, telling him to calm down or place him in handcuffs. I continued to tell him several times to calm down or I would have to place him in handcuffs. So he said the handcuffs worked. Calm down, I'll have to place you in handcuffs. Yes, ma'am. I might tell him that four times. That's in his statement? Yes, ma'am. Okay. Thank you, counsel. Thank you both. We're going to take a break before we have our next case. You can count on about ten minutes for the break, okay? We're in recess for ten minutes. Thank you.